Larry J. Crown (No. 013133)
Elan S. Mizrahi (No. 017388)
**TITUS BRUECKNER SPITLER & SHELTS PLC**
8355 East Hartford Drive, Suite 200
Scottsdale, Arizona 85255
Telephone:   480-483-9600
Facsimile:   480-483-3215
Emails:        lcrown@tbsslaw.com
                   elan@tbsslaw.com

*Attorneys for Defendant City of Bullhead City*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Norma Thornton, | Case No. 3:22-cv-08195-SMB-MTM |
| Plaintiff, | |
| vs. | **DEFENDANT CITY OF BULLHEAD CITY'S MOTION FOR SUMMARY JUDGMENT** |
| City of Bullhead City, Arizona, | |
| Defendant. | **(Oral Argument Requested)** |

Defendant City of Bullhead City, Arizona ("Bullhead City"), by and through counsel undersigned and pursuant to Rule 56, Fed.R.Civ.P., hereby moves this Court to issue its order granting summary judgment in its favor on Plaintiff Norma Thornton's ("Thornton") three constitutional claims – Fourteenth Amendment Substantive Due Process, Fourteenth Amendment Equal Protection, and Fourteenth Amendment Privileges or Immunities because the Bullhead City Food Sharing Ordinance ("Food Sharing Ordinance") is constitutional under these three alleged Fourteenth Amendment theories. The Food Sharing Ordinance bears a rational relationship to multiple legitimate government interests established by the factual record. The Food Sharing Ordinance provides part of the reasonable regulation of the multiple uses of public city parks, promotes public safety, and balances public resources by reasonably requiring private persons to obtain a permit to hold a defined food-sharing event in a public park. Since the Food Sharing Ordinance is a reasonable regulation of the uses of

1   city parks by the Bullhead City Council, summary judgment should be granted on all three
2   claims. In support of this Motion, Bullhead City submits the following Memorandum of
3   Points and Authorities and separate Statement of Facts [Doc. 33], incorporated herein by
4   reference.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

7          Summary judgment is appropriate if there are no disputed issues of material fact and
8   the moving party is entitled to judgment as a matter of law pursuant to F.R.C.P. Rule 56. On
9   February 16, 2021, Bullhead City enacted the Food Sharing Ordinance under Chapter 5.36
10  of its Municipal Code (Statement of Facts ("SOF"), Exhibit A [Doc. 33-1], Exhibit 5). The
11  Food Sharing Ordinance applies to everyone equally and provides modest, necessary
12  regulation of serving safe, free food to the public at large in public parks (SOF ¶ 14, Exhibit
13  A, Exhibit 5). The stated purpose of this Food Sharing Ordinance is to protect public health,
14  safety and welfare by requiring all persons and organizations that engage in the defined food-
15  sharing events at public parks to obtain a permit issued by the City prior to engaging in such
16  activity (SOF ¶ 68-69, Exhibit A, Exhibit 5). The permit requires compliance with applicable
17  Mohave County health regulations regarding safe food handling, preparation and
18  distribution, accommodate competing interests and uses for park space, and ensures that
19  events taking place in public parks are consistent with the intended primary uses of the parks
20  (SOF Exhibit A, Exhibit 5). The Food Sharing Ordinance reasonably addresses City
21  departments who prior to the Food Sharing Ordinance had repeatedly been called to address
22  public nuisance and other illegal behavior, clean up of human waste, litter, trash, and other
23  debris left over from food sharing events (SOF ¶ 157-182). These activities had resulted in
24  the deterioration of the condition of public property, and negatively affected use of parks by
25  other patrons (SOF ¶ 81-109).

26         Bullhead City's public parks are located on federally-owned land owned by the
27  Bureau of Reclamation (SOF ¶ 33-37). The development of these public parks was made
28  pursuant to a Master Plan. Management of the public parks is part of a vast public document

TITUS BRUECKNER SPITLER & SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

under the Park and Public Purpose Program (SOF ¶ 33-37). Moreover, Bullhead City regulates the many uses of the public parks through a variety of permits and rules (SOF ¶¶ 67, 112-123, 157-182). The Food Sharing Ordinance is one part in this overall regulation (SOF ¶¶ 80-88, and 112-123). It is this comprehensive set of regulations and balancing of limited public resources that allows Bullhead City to plan for and maximize the ongoing utilization of public parks for everyone's enjoyment (SOF ¶ 112-123).

Thornton has not established that she has a fundamental right to handle, prepare, and serve food to the public however, wherever and whenever she wants in the public parks. Thornton has not personally been deprived of any constitutional right, whether sounding in due process or equal protection. The bald claim that Thornton has a fundamental right to personally serve food in a public park to the public at large without regulation, and that she is above the law, is devoid of merit. Thornton is not familiar with the Food Sharing Ordinance in purpose, scope, requirements, or historical context. Thornton has never completed or submitted an application for a permit, and has intentionally chosen to avoid compliance with the law by serving her food on private land.

Thornton admitted at her deposition that she is able to serve the same quantity of her cooked food to the same public at large in a location on private property just two blocks away from Community Park. Thus, Thornton, like anyone else, has the option to either obtain a permit to share her cooked food at a public park, or she can share her cooked food without regulation on private land. That is her choice, but under no circumstance has Thornton's constitutional rights under the Fourteenth Amendment been violated by the Food Sharing Ordinance. Rather, the Food Sharing Ordinance balances City resources, the multitude of public parks events, and protects the public at large from consuming unsafe food.

## II.    FACTUAL SUMMARY

The factual record is contained in the submitted testimony that was provided at the depositions of Bullhead City and Thornton, along with the Food Sharing Ordinance and documents related to the history, purpose, and enactment of the Food Sharing Ordinance (SOF ¶¶ 1-233, Exhibit A, Exhibits 2, 3, 4, 5, 10, 11 and Exhibit B [Doc. 33-2]). The lengthy

TITUS BRUECKNER SPITLER & SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

- 3 -

and comprehensive Statement of Facts [Doc. 33] presents the uncontradicted sworn testimony of Bullhead City that establishes the reasonable propriety behind its Food Sharing Ordinance (SOF ¶¶ 1-51, 112-125, 157-182). Bullhead City reasonably regulates the activities in its public parks through a comprehensive set of regulations and permits (SOF ¶ 110-129). It balances its limited resources to meet City needs (SOF ¶¶ 81-88 and 110-129). On any given day, Bullhead City needs to be prepared for activities so that its limited public facilities can be utilized reasonably and fairly by all members of the public and not just those who want to engage in food sharing events (SOF ¶¶ 80-88 and 135-147). Bullhead City needs to be on notice of activities in advance so that it can plan and appropriately manage its resources such as police, fire, parks, trash and waste (SOF ¶ 130-141). This is especially true as Bullhead City is located in an isolated part of Arizona compared to the cluster of neighboring cities that make up the Phoenix metropolitan area (SOF ¶ 173-174). This advanced planning comes through the intertwinement of its regulations and permits overseen by City departments (SOF ¶ 172). Bullhead City also needs to deploy resources after events to inspect, clean, and repair areas as necessary (SOF ¶¶ 82-84 and 160-172). Bullhead City must have accountable permittees to determine who is responsible for the consequences of these events (SOF ¶¶ 33-37, 109-117, 172, 176).

Bullhead City reasonably regulates park activity by requiring permits of many different types to regulate the many different uses and activities at the public parks (SOF ¶¶ 109-117, 139-141, 160-172). The Food Sharing Ordinance applies equally to all people and organizations who wish to hold a food-sharing event as defined in Chapter 5.36.020 (Exhibit 5 to Exhibit A). There are different permits that cover paid events such as Farmer's Markets, sports tournaments, or food trucks (SOF ¶ 175-182). All permits that cover public park activities with food service require compliance with the requirements of the Mohave County Health Department (SOF ¶ 115-117). There can be no exception for the safe handling of food for the public at large at public parks (SOF ¶ 115-117, 172).

In addition, park activities are regulated by having automobile parking fees, automobile speed limits for driving through public parks, rentals of picnic tables, rentals of

ramadas, rentals of gazebos, designated park areas for dogs to be off-leash, leash requirements for dogs in non-designated areas of the parks, proper use of bathrooms, proper attire for sunbathing, hours the parks are open, use of trash cans, and use of larger trash dumpsters (SOF ¶¶ 160-166, 172).

When it comes to the service of food in public parks, whether at no cost or for a fee, all food handlers are required to comply with all requirements of the Mohave County Health Department (SOF ¶¶ 66-71, 79, 115-117). This is to protect the public from becoming sick or dying in the event that food is not handled properly, prepared properly, stored properly, refrigerated properly, and served properly (SOF ¶ 51-79). The City must take steps to make sure it is not liable for a failure to have reasonable regulations in place to protect all members of the public during use of the public parks (SOF ¶¶ 109-110, 176).

The Food Sharing Ordinance is the result of wide community involvement where shelter and food issues for the homeless and utilization of public and private resources were analyzed for more than a decade (SOF ¶ 1-182). The extensive sworn testimony provided by Bullhead City at the Rule 30(b)(6) deposition through City Manager Toby Cotter provides a comprehensive history and factual record behind the Food Sharing Ordinance (SOF ¶ 1-182). For more than 10 years Bullhead City has actively worked with the multiple charities and organizations whose goal is to assist homeless people in providing shelter and food (SOF ¶ 1-57). Mohave County Department of Health became an active participant in the process resulting in construction of the Catholic Charities Shelter (SOF ¶ 1-57). With the completion of the Catholic Charities Shelter, there is space for 60 individuals to be sheltered at night and it serves over 6,000 meals per month (SOF ¶ 49). Free City bus passes are provided to anyone that can be used to travel throughout Bullhead City (SOF ¶ 58-62). There is a bus stop 150 yards from the Shelter (SOF ¶ 58-62).

Thornton's testimony under oath presented as SOF Exhibit B undercuts her claim that she has a fundamental right to prepare and serve food to the public at public parks without regulation or accountability (SOF ¶ 183-233). Thornton conceded that she is not familiar with the specific terms, conditions, purposes, scope, or requirements of the Food Sharing

TITUS BRUECKNER SPITLER & SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

**TITUS BRUECKNER SPITLER & SHELTS PLC**
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

1    Ordinance (SOF ¶ 223). Thornton has never applied for a food sharing permit (SOF ¶ 222).

2    Thornton has not tried to be current in complying with Mohave County requirements for

3    food handling (SOF ¶ 221-223). Thornton's testimony establishes her deliberate choice to

4    not comply or be bothered by the reasonable requirements to obtain a permit to share food

5    at public parks (SOF ¶ 204-207, 226-233). Thornton has chosen to provide the same food

6    service on private property which is not regulated by Bullhead City or Mohave County

7    (SOF ¶¶ 208-217, 220-233).

8         In short, the Statement of Facts provides dispositive evidence that establishes a

9    rational relationship between the Food Sharing Ordinance and the multitude of legitimate

10   public interests (SOF ¶ 172-182). Thornton's personal choice to avoid regulation of her

11   personal and private food handling fails to establish a deprivation of Fourteenth Amendment

12   constitutional rights as a matter of fact and law.

13   **II.    LEGAL ARGUMENT**

14        **A.    Count One - Substantive Due Process - Fourteenth Amendment**.

15        In Count One, Thornton presents a Fourteenth Amendment Substantive Due Process

16   claim alleging that she has a fundamental right to serve food she cooked at her home to the

17   public at large in public parks without complying with the Bullhead City Food Sharing

18   Ordinance or the Mohave County safe food handling requirements. There is no legal

19   authority supporting her due process claim.

20        In paragraph 111, Thornton couches her fundamental right as engaging in charitable

21   food service that should be free of any municipal or county regulation. Thornton does not

22   have a fundamental right to share food with the public at large in public parks without

23   complying with the reasonable safety regulations imposed by Bullhead City and the Mohave

24   County Health Department. Although Thornton has alleged this claim as a Fourteenth

25   Amendment substantive due process claim, there is little legal authority that addresses such

26   conduct under the Fourteenth Amendment.

27        There is some authority that by comparison addresses the constitutionality of food

28   sharing ordinances under the First Amendment. For example, in *First Vagabond Church of*

- 6 -

*God v. City of Orlando,* 639 F.3d 756 (2011) the court addressed an Orlando municipal Food Sharing Ordinance that limited the number of feedings of large groups in centrally located parks. For purposes of analysis, the court assumed that such conduct was entitled to some protection under the First Amendment. The court relied on *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 104 S. Ct. 3065, 82 L.Ed.2d 221 (1984). The court noted the Supreme Court held that the prohibition of overnight sleeping in public parks, as a symbolic statement about the plight of the homeless, withstood constitutional scrutiny "either as a time, place or manner restriction or as regulation of symbolic conduct." The regulation was valid as a reasonable time, place, or manner restriction because "the ban on sleeping was clearly a limitation on the manner in which the demonstration could be carried out."

The *First Vagabond* court held that the Orlando Food Sharing Ordinance was a valid regulation of expressive conduct that satisfied all four requirements of *United States v. O'Brien,* 391 U.S. 367, 88 S. Ct. 1673, 20 L.Ed.2d 672 (1968). The Supreme Court has instructed that the validity of such regulations does not turn on a judge's agreement with the responsible decision maker concerning the most appropriate method for promoting significant government interest, citing *United States v. Albertini,* 472 U.S. 675, 105 S. Ct. 2897, 86 L.Ed.2d 536 (1985).

*Gallagher v. City of Clayton,* 699 F.3d 1013 (8th Cir. 2012), involved a Fourteenth Amendment claim that smoking tobacco in public was a fundamental right. The court stated that the doctrine of substantive due process protects unenumerated fundamental rights and liberties under the due process clause of the Fourteenth Amendment. The *Gallagher* plaintiff proposed that the court declare smoking tobacco to be a fundamental right because tobacco was an ancient tradition in American history or a fundamental right to bodily integrity. The court rejected *Gallagher's* argument because this alleged smoking right was not implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it were sacrificed. *Supra,* at 1017.

Paragraph 112 of Plaintiff's Complaint erroneously states that the fundamental right to perform charitable acts includes a right to prepare and share food with the needy. This

double-layered allegation is without legal or factual support. There is not a fundamental right to perform charitable acts nor a fundamental right layered inside such right to prepare and share food with the needy in public parks without regulation.

Bullhead City's lengthy Statement of Facts presents Bullhead City's extensive involvement on behalf of the homeless and shows the clear, reasonable, and legitimate government interests in enacting the Food Sharing Ordinance. The Food Sharing Ordinance is reasonable, is the result of extensive community involvement and analysis over many years, and is one of many Ordinances that forms Bullhead City's regulatory structure over the multitude of activities that take place daily in its public parks. The Food Sharing Ordinance is a proper exercise of government regulation that supports and promotes the reasonable balance of utilizing public resources to meet the needs and wants of the public.

At its core, the Food Sharing Ordinance provides public safety and protects against public consumption of unsafe food in public parks. Based on the coordination and vision behind this balanced regulatory process, the public as a whole can reasonably use the public parks as a whole. No one person has a proprietary interest in public lands that are leased from the Federal Bureau of Reclamation. No one person has the right to declare that they are above the law and cannot be fairly regulated like everyone else through reasonable requirements that promote balanced, lawful, and safe use of and recreation within the public parks. Thornton cannot establish a fundamental Fourteenth Amendment substantive due process right that places her above the reasonable regulation of food service provided by the Food Sharing Ordinance in conjunction with Mohave County Health Department requirements. Summary judgment should be granted on Count One.

**B.**      **Count Two – Equal Protection.**

Thornton falsely claims that the Food Sharing Ordinance violates her equal protection rights under the Fourteenth Amendment because it treats persons sharing food they prepared in their home kitchen at no cost to the public at large in public parks differently from those serving food for a cost in public parks who have responsibly obtained permits and have complied with Mohave County health food safety requirements. The factual record

TITUS BRUECKNER & SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

establishes that all food service to the public at large in public parks is regulated by Bullhead City through its many permits' requirements. Overriding Bullhead City's regulation of all food service to the public in public parks is the Mohave County Department of Health's requirement that all food service in public parks and food handlers must have a valid food handler's card. Mohave County regulates the safe handling, preparation, storage, and service of food. Mohave County food handling requirements apply to all food handlers, whether they prepare food in an approved commercial kitchen, or in their unlicensed and unregulated home kitchen.

The equal protection clause is essentially a direction that all persons similarly situated should be treated alike. *City v. Cleburne,* 473 U.S. 432 at 439, 105 S. Ct. 1349 (1985). As a threshold matter, in order to state an equal protection claim, a plaintiff must have established that she was treated differently from others similarly situated to her. *Carter v. Arkansas,* 392 F.3d 965 (8th Cir. 2004). Where a law neither implicates a fundamental right nor involves a suspect or quasi-suspect classification, the law must only be rationally related to a legitimate government interest. *Gallagher, supra,* at 1019. Such a law is accorded a strong presumption of validity and is upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification, *Id.*

The Food Sharing Ordinance applicability to non-social gatherings that are planned, organized, promoted, or advertised by a private group or organization at a public park where prepared food requiring distribution in a timely manner or temperature control for safe consumption is served or distributed for charitable purposes at no cost or for a nominal charge to any member of the public does not impinge upon any fundamental right of Thornton. The uncontradicted testimony provided by Bullhead City is that the Food Sharing Ordinance applies to all persons equally.

Reduced to its essence, Thornton's position is that she is above the law, does not have to read the Food Sharing Ordinance, does not have to know the contents of the Food Sharing Ordinance, does not have to know the requirements of the Food Sharing Ordinance, she does not have to apply for a food sharing permit, and she does not have to comply with Mohave

TITUS BRUECKNER SPITLER & SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

County health requirements that are applicable to all persons who serve food to the public in public parks. This untenable position should be quickly rejected by this Court.

Thornton tries to claim she is a member of a class that includes persons sharing food in public parks at no cost as distinguished from persons sharing food in public parks for a cost, persons sharing food in public parks at private social gatherings, and persons sharing food on private property. This is an arbitrary and artificially made-up means to attempt to create a class where none exists. Again, the testimony of Bullhead City establishes that all food service at public parks to the public at large requires a permit issued by Bullhead City. All food handlers serving food at public parks must possess a current, valid food handler card issued by the County. Safe food handling is a requirement of Mohave County Health Department. These reasonable regulations do not impinge in any way on a fundamental right of Thornton or allows her to create a false class for herself.

A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns, both public and private, and that account for limitations on the practical inability of the state to remedy every ill. Here, the undisputed factual record provides a long list of legitimate public interests in regulating the multitude of activities at Bullhead City's public parks. All of the purposes enunciated in the Findings and Purpose Section of the Food Sharing Ordinance are legitimate public purposes. Regulation of food sharing events are rationally related to all of them. Ultimately, the Food Sharing Ordinance promotes public safety and health and the enjoyment by all members of the public in a balanced fashion to reasonably use and recreate in public parks.

Where a law neither implicates a fundamental right nor involves a suspect or quasi-suspect classification, the law must only be rationally related to a legitimate government interest. *Gallagher v. City of Clayton,* 699 F.3d 1013 (8th Cir. 2012). Such a law is accorded a strong presumption of validity and is upheld when there is any reasonable conceivable state of facts that could provide a rational basis for the classification. A legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by

evidence or empirical data. The law survives rational basis review so long as the legislative facts on which the law is based could reasonably be conceived to be true by the governmental decision-maker. *Gallagher, supra,* at 1020. On this record, Thornton's equal protection claim does not overcome the Food Sharing Ordinance's strong presumption of validity. Thornton's equal protection claim fails as a matter of law.

      **C.**    **Count Three - Privileges or Immunities Claim – Fourteenth Amendment**

      Summary judgment should be granted on Count Three based on Thornton's footnote 1 after paragraph 138 which states: "Plaintiff concedes that this claim is currently foreclosed by the *Slaughterhouse Cases,* 83 U.S. 36 (1872). She raises it here to preserve it for appellate review." Based on Thornton's concession, summary judgment should be granted for Count Three under the privileges or immunity claim.

**III.**    **CONCLUSION**

      The comprehensive, undisputed evidence presented in the Statement of Facts supports summary judgment on all three of Thornton's Fourteenth Amendment constitutional claims. The Food Sharing Ordinance is the culmination of more than a decade of team analysis by all interested community parties, public and private, of the best means to assist and support the homeless population in Bullhead City while balancing the global public's right to use the public parks. The Food Sharing Ordinance is a piece within the totality of resources and measures that have been put in place to assist the homeless. The coordination of community resources includes the Catholic Charities Shelter and commercial kitchen, other charitable organizations who provide food, free City bus passes, and significant funding provided by Bullhead City. These resources are balanced with the public's right to share in the use of public parks. No person has a proprietary interest in a public park or in a specific location or area within a public park.

      Bullhead City and the Bullhead City community of charitable organizations should be commended for their compassion, and strong efforts in providing regulated shelter and food for the homeless population. Bullhead City and its community of charities has developed an impressive team approach that marshals the limited resources of the

TITUS BRUECKNER SPITLER & SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

1 community to most effectively serve the homeless population. Bullhead City goes to great
2 lengths and expense to meet and balance the multitude of interests and resources necessary
3 to safely operate public parks. Food safety is paramount and Bullhead City must be proactive
4 so that it does not expose public tax dollars to liability claims.

5      It is commendable that Thornton is a charitable person who wants to help feed some
6 of the homeless in Bullhead City. Her intentions are with good faith and from a good heart.
7 However, Thorton's testimony shows that she lacks knowledge of the purpose and scope of
8 the Food Sharing Ordinance. By her own decision, Thornton refused to participate in the
9 community team efforts such as volunteering at the Catholic Charities kitchen where more
10 than 6,000 meals are served monthly. Instead, Thornton is demanding that she be allowed to
11 serve food however, whenever, and wherever she wants in public parks without regulation
12 or accountability to the community. This is not acceptable because it contravenes Bullhead
13 City's reasonable Food Sharing Ordinance that protects the public using public parks.

14      Wherefore, this Court should grant summary judgment in favor of Bullhead City on
15 Counts One, Two and Three.

16      RESPECTFULLY SUBMITTED this  9th  day of November, 2023.

17                                      TITUS BRUECKNER SPITLER & SHELTS PLC

19                                  By: /s/ *Larry J. Crown*
20                                     Larry J. Crown
                                    Elan S. Mizrahi
21                                     *Attorneys for Defendant City of Bullhead City*

22

23

24

25

26

27

28

TITUS BRUECKNER SPITLER & SHELTS PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ  85255
480-483-9600

1

### CERTIFICATE OF SERVICE

2        I hereby certify that on this _9th_ day of November, 2023, I electronically transmitted

3    the foregoing document and any attachments to the U.S. District Court Clerk's Office using

4    the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the

5    following CM/ECF registrants:

6                Paul V. Avelar
                 Institute for Justice
7                398 South Mill Avenue, Suite 301
                 Tempe, AZ 85281
8                pavelar@ij.org

9                Diana K. Simpson
                 Suranjan Sen
10               Institute for Justice
                 901 North Glebe Road, Suite 900
11               Arlington, VA 22203
                 Diana.simpson@ij.org
12               ssen@ij.org

13               *Attorneys for Plaintiff*

14

15   /s/ *Karin A. Meister*
     _____
16   8962-126

17

18

19

20

21

22

23

24

25

26

27

28

*Titus Brueckner Spitler & Shelts PLC*
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600