KAB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Norma Thornton,

                    Plaintiff,

v.

Bullhead City,

                    Defendant.

No. CV-22-08195-PCT-SMB (MTM)

**ORDER**

Plaintiff Norma Thornton, who is represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1.)  The Parties cross-move for summary judgment.  (Doc. 29, 34.)[1]

I.     **Background**

In her Complaint, Plaintiff seeks declaratory and injunctive relief against Defendant Bullhead City's enforcement of Bullhead City Code of Ordinances §§ 5.36.010-.80. Plaintiff asserts that this ordinance is unconstitutional both facially and as-applied to her and violates her constitutional rights to substantive due process (Count 1), equal protection (Count 2), and privileges or immunities of citizenship (Count 3).  Plaintiff also seeks nominal damages.

The Parties cross-move for summary judgment on all of Plaintiff's claims.[2]

---

[1] Although the Parties request oral argument, the Court declines to hold oral argument finding that it is unnecessary.  *See* LRCiv 7.2(f).

[2] Plaintiff concedes that her Fourteenth Amendment claim for violations of privilege

## II.   Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

. . . .

---

or immunities of citizenship is foreclosed by United States Supreme Court precedent. (Doc. 29-1 at 4 n.1.)  Accordingly, summary judgment will be granted in favor of Defendant as to Count 3.

## III.   Facts

Plaintiff challenges the Bullhead City Code of Ordinances relating to "Food Sharing Events" (hereinafter the food sharing ordinance).  The relevant sections are:

**5.36.010 - Findings and purpose.**

Outdoor food sharing events take place frequently in public parks. A number of the people served are homeless, but many are also people with very limited economic means who are not homeless but whom are able to avoid homelessness in part by accessing food from these events. Private persons and organizations have engaged in the distribution of prepared foods to those in need without having to obtain permits or operate under regulations that control the manner in which food is prepared, stored, transported, or served. City departments have been repeatedly called to address public nuisance and other illegal behavior, clean-up human waste, litter, trash and other debris left over from the food sharing events. These activities have resulted in a deterioration of the condition of public property and negatively affect use of parks by other patrons. The purpose of this chapter is to protect public health, safety and welfare by requiring all persons or organizations that sponsor, promote or engage in food sharing events at public parks to obtain a permit issued by the city prior to engaging in such activity, and requiring compliance with applicable Mohave County health regulations regarding food preparation and distribution; to accommodate competing interests and uses for park space and to ensure that events taking place in public parks are consistent with the intended primary uses of the parks.

- **5.36.020 - Definitions.**

"Public park" for purposes of this chapter means those public lands as defined under Section 12.12.010 of the Bullhead City Municipal Code.

"Food sharing event" means a non-social gathering that is planned, organized, promoted or advertised by a private group or organization at a public park where prepared food requiring distribution in a timely manner or temperature control for safe consumption is served or distributed for charitable purposes at no cost, or for a nominal charge, to any member of the public.

"Prepared food" does not include sealed pre-packaged foods readily available from retail outlets and intended for consumption directly from the package.

- **5.36.030 - Unlawful activity.**
  It is unlawful for any person or organization to sponsor, promote or engage in a food sharing event at a public park in violation of the provisions of this chapter. Any violation of this chapter is a class 2 misdemeanor.

- **5.36.040 - Permit application procedure.**
  A.  Any person or organization sponsoring, promoting or engaging in a food sharing event at a public park must obtain a permit issued by the finance department and comply with the following requirements:
    1.  Submit a permit application on a form provided by the city;
    2.  Submit a permit fee in an amount established by the city council;
    3.  Provide proof of compliance with all applicable Mohave County regulations relating to food preparation and distribution;
    4.  Provide proof of general liability insurance with coverage limits in the amount of one million dollars per occurrence with the City named as an additional insured by endorsement;
    5.  Agree to indemnify, hold harmless and defend the city from claims arising from negligent acts, omissions or reckless or willful conduct of the permittee or permittee's employees, agents or volunteers related to permittee's activities pursuant to the permit; and
    6.  Provide a refundable deposit in the amount of two hundred fifty dollars for maintenance and cleaning costs and agree to reimburse the city for maintenance and cleaning costs in excess of the deposit.
  B.  Applications will not be accepted for a food sharing event submitted less than five business days prior to the scheduled event nor more than sixty days prior to the event.
  C.  City shall provide written notice of any denial of permit issuance.
  D.  A permit under this chapter shall not be issued unless all conditions of this Section 5.36.040 are fulfilled.

. . . .

- **5.36.050 - Event regulations.**
  A.   Permittees shall be prepared to show proof of a valid permit issued pursuant to this chapter upon request by any police officer or code enforcement officer of the city.
  B.  Permittees shall be prepared to show proof of compliance with all applicable Mohave County regulations relating to food preparation, handling and distribution upon request by any police officer or code enforcement officer of the city.
  C. Permittees shall not conduct an event on any other publicly owned or controlled property except for the public park for which the permit was issued.
  D.  Permittees shall hold no more than one event per month, regardless of location. No location will host more than one event per month.
  E.  No food sharing event may continue for more than two hours.

- **5.36.060 - Revocation of permits.**
  A.   Any permit granted pursuant to the provisions of this chapter may be revoked by the city manager or city manager's designee for any violation of this chapter, any applicable provision of the Bullhead City Municipal Code or laws and regulations of the County of Mohave or State of Arizona related to food sharing.
  B.  Revocation shall be made only after written notice of the city's decision to revoke has been provided to the permit holder and upon a hearing granted to the holder of the permit so revoked as specified in this chapter. A permit holder may not sponsor, promote or engage in a food sharing event once written notice of the permit revocation has been issued.

- **5.36.070 - Appeal.**
  A.  An applicant or permit holder may appeal the denial of a permit application or revocation of a permit by completing a notice of appeal to the city manager's office within ten days from the date of being notified of the denial of the application or revocation of the permit. The city manager's office shall forward the notice to the Bullhead City Municipal Court upon receipt. The applicant or permit holder shall be entitled to a hearing pursuant to the provisions of this chapter.
  B.  The Bullhead City Municipal Court has jurisdiction to decide the denial or revocation of a permit under this chapter. The court shall conduct the hearing within five business days of written notice of the appeal from the city manager's office.

> Failure to request the hearing in a timely manner constitutes a waiver of the right to challenge the denial or revocation of the permit. At the hearing the city has the burden of establishing by a preponderance of the evidence that a basis existed for the decision. The magistrate may admit any reliable and relevant evidence but the rules of evidence shall not be strictly applied. If the magistrate finds that the denial or revocation is supported by a preponderance of the evidence, the denial or revocation shall be sustained. The magistrate's decision may be appealed to the superior court within ten business days of the magistrate's decision.

- **5.36.080 - Exemptions.**
  > The provisions of this chapter do not apply to permitted farmer's markets or special events/activities where commercial food distribution takes place or to events on private property.

Plaintiff, a former restaurant owner, has frequently provided food to the needy, and, when she retired to Bullhead City, she determined there was a community need for food for people who go without food and shelter on any given night.  (Doc. 30 ¶¶ 5-7, 9-10-28.)  The Bullhead City Community Park (the Park) is near Plaintiff's house and is miles away from any regular source of no-cost food, such as a shelter.  (*Id.* ¶¶ 24-26.)  Plaintiff started making warm, nutritious meals at home and bringing them to the Park to share.  (*Id.* ¶¶ 39-43.)  Plaintiff gets some ingredients from a food bank and spends half of her fixed income on the rest.  (*Id.* ¶¶ 40-41.)  Plaintiff brings plates, utensils, and trash bags when she provides food in the Park.  (*Id.* ¶ 35.)  For years, Plaintiff shared food at the Park with an average of forty people at a time.

Bullhead City Manager Toby Cotter has attended meetings of a Homeless Task Force since 2012; the Task force consists of social service agencies, churches, Catholic charities, City management, and community members, such as mental health providers, and doctors.  (Doc. 33 ¶¶ 3, 6, 42-43.)  The initial goal of the Task Force was to build a homeless shelter, but that goal evolved over time; today, the goals revolve around the Catholic Charities Homeless Shelter and providing resources to veterans, mental health resources, and access to the courts and college.  (*Id.* ¶ 46.)

1    In 2017, the Mohave County Health Department asked the Homeless Task Force
2    and the City to impose regulations on the food sharing in Bullhead City's parks due to
3    concerns that people were making food at home and bringing and sharing it in the park.
4    (*Id.* ¶ 7.)³  Bullhead City officials asked the Mohave County officials to provide a grace
5    period and informed the Mohave County officials that the City was working with Catholic
6    Charities to operate a day center and to create a new homeless shelter in Bullhead City.
7    (*Id.* ¶ 8.)⁴  During conversations with the County Health Department and the Homeless
8    Task Force, the City determined that there were no regulations protecting the public from
9    food borne illness in food prepared by people distributing food during planned events in
10   the Park.  (*Id.* ¶ 19.)

11   The Catholic Charities Shelter opened in August 2021, serves around 6,000 meals
12   per month, and is open to everyone in the City.  (*Id.* ¶¶ 9, 56; Doc. 30 ¶ 55.)  For the last
13   few years, the City has given $1,000 per month to support the feeding of individuals at the
14   Catholic Charities Shelter, and the Shelter never runs out of food.  (Doc. 33 ¶¶ 55, 57.)
15   The City provides free bus passes to people who are homeless.  (*Id.* ¶ 58.)

16   In response to complaints by residents of Bullhead City regarding homeless people
17   in the parks, the Mayor stated that the City was "researching what [other] cities are trying
18   or doing and [the City had] come up with some ideas that appear to be legal."  (Doc. 30 ¶¶
19   53-54.)  In those emails, City Manager Cotter stated that he was "looking at provisions in
20   the city code that will regulate feeding in the park. [He] had hoped to do all of this sooner,

---

22   ³ Plaintiff objects to the "content of the discussion as hearsay," but the content of
23   the discussion is not being offered to prove the truth of the matter asserted.  Moreover, the
     evidence that Plaintiff presents shows that people make food at home and bring it and share
24   it in the park, so the content of the discussion is undisputed in this lawsuit.  Accordingly,
25   Plaintiff's hearsay objection is overruled.

26   ⁴ Plaintiff objects to the "content of the discussion as hearsay," but the content of
27   the discussion is not being offered to prove the truth of the matter asserted.  Moreover,
     Plaintiff asserts that the City delayed passing the food-sharing ordinance until Catholic
28   Charities opened, so she does not appear to dispute the content of the discussion.
     Accordingly, Plaintiff's hearsay objection is overruled.

but all of this has a nexus of the shelter. Once the shelter is open these plans can be initiated." (*Id.* ¶ 55.)  Bullhead City enacted the food sharing ordinance after citizen requests, citizen complaints, citizen calls to 9-1-1, citizen calls to City Staff on a daily, weekly, and monthly basis, complaints by moms who felt unsafe going to the park with their children, concerns regarding safety in the park, and the Mohave County food safety request.  (Doc. 33 ¶ 23.)

On February 2, 2021, the City Council met to discuss "park regulations, public lands, and homelessness in Bullhead City." (*Id.* ¶ 30.)  Then-Vice Mayor (now Mayor) Steve D'Amico stated that homeless people "should be eating up at the shelter.  The park is for families, tourists, kids, people enjoying themselves." (*Id.* ¶ 58.)

On February 16, 2021, the food sharing ordinance was presented to the City Council based on nearly a decade's worth of work with social service agencies and Mohave County Public Health.  (Doc. 33 ¶ 10.)  The food sharing ordinance was passed by a vote of 5-2, and went into effect on May 1, 2021.  (Doc. 40 ¶ 10; Doc. 30 ¶ 89.)

On March 8, 2022, Plaintiff shared prepared food with people in need at the Park, and a complaint was made to police about a person "feeding transients in the park." (Doc. 30 ¶¶ 98-99.)  As Plaintiff was loading her car, an officer of the Bullhead City Police Department approached her to ask what she was doing, and she responded "she was there to feed the homeless." (*Id.* ¶ 101.)  The officer told her that "the City Ordinance [was] against this action." (*Id.*)  The officer began to arrest her, but the City Police Chief told the arresting officer that Plaintiff did not need to go to jail, but the arresting officer should warn Plaintiff that she could go to jail if she violated the ordinance in the future.  (*Id.* ¶ 102.)  Plaintiff received a citation for violation of Bullhead City Ordinance § 5.36.030, a Class 2 misdemeanor, which carries a punishment of up to $750 in fines and four months' imprisonment.  (*Id.* ¶¶ 103, 106.)  In July 2022, the City Prosecutor moved to dismiss the charge against Plaintiff with prejudice explaining that "defendant was unfamiliar with the new law.  She now understands it." (*Id.* ¶ 109.)

. . . .

Plaintiff cannot afford the costs of obtaining a "food sharing event" permit, wants to share food more than once per month, and does not want to prevent others from sharing food at the Park since only one food sharing event is permitted every 30 days. (*Id.* ¶¶ 110-112.) Plaintiff obtained the permission of a jet ski shop to utilize its private alley to share food with people in need. (*Id.* ¶ 115.) The alley differs from the Park in that it has no shade, tables or eating areas, no clean drinking water, no grass, and no bathroom or handwashing facilities. (*Id.* ¶¶ 119-120.) Plaintiff shares food with an average of 30 people daily in the alley. (*Id.* ¶ 125.)

**IV. Discussion**

Plaintiff asserts that she is entitled to summary judgment because the food sharing ordinance violates her rights to due process and equal protection "by targeting charitable motivations."

Defendant asserts that it is entitled to summary judgment because the food sharing ordinance applies to everyone equally and provides modest, necessary regulation of serving safe, free food to the public at large in order to protect public health, safety and welfare by requiring all persons and organizations engaged in defined food sharing events at public parks to obtain a permit issued by the City prior to engaging in such activities in order to comply with applicable Mohave County health regulations regarding safe food handling, preparing and distribution, to accommodate competing interests and uses for park space, and to ensure that events taking place in public parks are consistent with the intended primary uses of the parks.

**A. Substantive Due Process**

Plaintiff asserts that the food sharing ordinance violates her "fundamental" right to charity and is unconstitutionally arbitrary. Plaintiff asserts that the right to perform charity is fundamental because it is deeply rooted in American history and tradition. Plaintiff asserts that the government cannot have the power to "prevent individuals from assisting each other." (Doc. 29-1 at 11.) Plaintiff asserts that the food sharing ordinance makes her criminally liable for performing charity. Plaintiff further asserts that the food sharing

ordinance is unconstitutionally arbitrary because it associates Plaintiff with the "nuisance activities of other people" and results in fewer people being fed.

Defendant asserts that Plaintiff does not have a fundamental right to share food with the public at large in public parks without complying with reasonable safety regulations imposed by Bullhead City and the Mohave County Health Department.  Defendant asserts that the food sharing ordinance is reasonable, is the result of extensive community involvement and analysis over many years, and is one of many ordinances that form Bullhead City's regulatory structure over the multitude of activities that take place daily in its public parks, and is a proper exercise of government regulation that supports and promotes the reasonable balance of utilizing public resources to meet the needs and wants of the public.

### 1.     Legal Standard

"The Due Process Clause of the Fourteenth Amendment embodies a substantive component that protects against 'certain government actions regardless of the fairness of the procedures used to implement them.'"  *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460-61 (2d Cir. 1996) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

"This 'substantive due process,' as it has come to be known, however, does not stand as a bar to all governmental regulations that may in some sense implicate a plaintiff's 'liberty.'  Rather, the level of scrutiny with which [a court] will examine a governmental regulation turns on the nature of the right at issue."  *Immediato*, 73 F.3d at 460-61.  When the right infringed is "fundamental," the governmental regulation must be "narrowly tailored to serve a compelling state interest."  *Id.*  Rights are fundamental when they are "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed" and "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (citations omitted); *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 216 (2022) ("In deciding whether a right falls into either of these categories, the question is whether the right is deeply rooted in our history and tradition and whether it is essential to this Nation's scheme of ordered liberty.")

(internal citation omitted).  Moreover, when claiming a right is fundamental, there must be a "careful description of the asserted fundamental interest."  *Id.* at 721.  Action by an executive government official that is conscience shocking violates the substantive due process clause.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)).  Nevertheless, "only the most egregious official conduct" violates substantive due process under this standard.  *Id.* at 846.

Where the claimed right is not fundamental or the government's behavior is not "conscience shocking," the governmental regulation need only be reasonably related to a legitimate state objective.  *Id.*

## 2.    Analysis

The United States Supreme Court "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."  *Albright v. Oliver*, 510 U.S. 266, 271–72 (1994).  "The doctrine of judicial self-restraint requires [courts] to exercise the utmost care whenever we are asked to break new ground in this field."  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992).

Moreover, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Albright*, 510 U.S. at 273 (internal citation omitted); *Gehl Grp. v. Koby*, 63 F.3d 1528, 1539 (10th Cir. 1995) (declining to address substantive due process claim where Plaintiffs' claim was properly analyzed under the "more specific guarantees of the First Amendment, Equal Protection Clause, and procedural component of the Due Process Clause.").  This is a "threshold issue" that a Court must first decide when evaluating a substantive due process claim.  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).

Plaintiff's substantive due process claim fails for three reasons.

First, Plaintiff asserts an equal protection claim based on the exact behavior that

allegedly gives rise to her substantive due process claim, and therefore Plaintiff's acknowledgement that there is explicit textual source of constitutional protection that governs her claim precludes a separate substantive due process claim. *See, e.g.*, *Koby*, 63 F.3d at 1539; *Lewis*, 523 U.S. at 842.

Second, Plaintiff has not provided a "careful description" of her asserted "fundamental interest." Rather, Plaintiff generalizes a right to give charity without any focus on the facts of this case. Indeed, Plaintiff claims the food sharing ordinance criminalizes giving charity. But, in actuality, the food sharing ordinance *regulates* how charity may be given in public parks. Plaintiff does not provide any argument that there is a fundamental right to give charity *without regulation* on public property. *See, e.g.*, *Collins*, 503 U.S. at 125; *Doe v. City of Lafayette*, 377 F.3d 757, 769 (7th Cir. 2004) (the definition of a substantive due process right must be "specific and concrete," avoiding "sweeping abstractions and generalities" because it is "constrained by the factual record before [the court], which sets the boundaries of the liberty interests truly at issue in the case.").

Third, Plaintiff has not shown that the right at issue in this lawsuit is either fundamental or that the government's behavior is "conscience-shocking." Plaintiff appears to assert that she has an unfettered right to give charity without regulation. The Fourth and Second Circuits have previously determined that the right to serve one's community, while important, is not a fundamental right and has not warranted strict scrutiny because it is not so "intimate and personal" that it is fundamental within the protection of the Fourteenth Amendment. *Herndon by Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*, 89 F.3d 174, 179–80 (4th Cir. 1996); *Immediato*, 73 F.3d at 463 ("[Plaintiff's] choice as to how to spend his free time, and whether or not he will perform any volunteer services, is not the stuff to which strict scrutiny is devoted.").

Moreover, although Plaintiff argues that the Government's behavior is conscience shocking, "pretextual," and arbitrary, the evidence before the Court shows that City officials considered various competing priorities when crafting the food sharing ordinance.

As the United States Supreme Court has acknowledged, "[h]omelessness is complex.  Its causes are many.  So may be the public policy responses required to address it."  *City of Grants Pass v. Johnson*, 144 S.Ct. 2202, 2223 (2024).  It is clear that Plaintiff does not agree that the food sharing ordinance is the best way to accomplish the City's goals, but Plaintiff's disagreement with the City's methods does not render the food sharing ordinance "conscience shocking."

The Government has shown that the food sharing ordinance is reasonably related to a legitimate state objective: namely, the ordinance was put into effect to reduce food sharing events in the park that had become an area of community concern for various reasons, including protecting the public from sickness due to unregulated food service;[5] allowing all members of the public to enjoy the park so that food sharing events at breakfast, lunch, and dinner do not prevent other community members from enjoying the park; and reducing large gatherings of homeless people, which can sometimes create a public nuisance in the form of indecent acts in public, including, drugs, alcohol abuse, bottles of alcohol, drug paraphernalia, and individuals with mental health problems who are harassing or scaring nearby park-goers, reducing trash in public parks, making police and fire aware of a potentially large group gathering, and addressing community complaints regarding the availability of the parks to the entire community.  (Doc. 33 ¶¶ 109, 124-125, 157, 104, 88, 82, 157-159.)

For all the foregoing reasons, summary judgment will be granted in favor of Defendant as to Plaintiff's substantive due process claim.

. . . .

---

[5] Plaintiff disputes this concern because the City does not have evidence of anyone getting sick from a food sharing event, the City is shielded from liability for the charitable sharing of food on its property, and the City has no obligation to prevent people from falling sick.  (Doc. 40 ¶ 109.)  Plaintiff's assertions do not demonstrate that this was not a concern of the City and do not dispute that the Mohave Department of Public Health expressed concerns to the City about people getting sick from public food sharing events.  In short, Plaintiff's disputes do not create a disputed issue of material fact that this was one of the reasons motivating the food sharing ordinance.

**B.     Equal Protection**

Plaintiff asserts that the City's food sharing ordinance violates equal protection because it irrationally distinguishes between people who share food in the park for charitable purposes and people who share food in the park for non-charitable, non-commercial purposes.

Defendant asserts that although Plaintiff "tries to claim she is a member of a class that includes persons sharing food in public parks at no cost as distinguished from persons sharing food in public parks for a cost, persons sharing food in public parks at private social gatherings, and persons sharing food on private property," Plaintiff attempts to create a class where none exists because all food service at public parks to the public at large requires a permit issued by Bullhead City, and the permit requirement is reasonably related to a legitimate public purpose because the food sharing ordinance promotes public safety and health and the enjoyment of the parks by all members of the public in a balanced fashion.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *see City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  In addressing an equal protection claim, the Court must first decide the level of scrutiny to apply.  *Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999).  Strict scrutiny is applied only if the policy discriminates against a suspect class or infringes upon a fundamental right.  *Id.*  Under the rational basis test, laws are presumed to be valid if they are rationally related to a legitimate governmental interest.  *Rodriguez*, 169 F.3d at 1180-81.

Here, the rational basis test applies.  Plaintiff asserts that the Ordinance violates the Equal Protection Clause because a person needs a permit "if motivated by a charitable purpose," but does not need a permit to share food with others in the park if the motivation differs, such as having a child's birthday or a pizza party for people in need.  Plaintiff

asserts that the City's primary asserted motivation of food safety is "farcical" because the City does not have evidence that anyone has fallen ill from food sharing and the only relevant part of the ordinance addressing food safety is a required Food Handler's Card. As noted above, Plaintiff's assertion that food safety could not have motivated the City's decision is belied by other evidence in the Record that the Mohave County Health Department expressed this very concern to the City and that this was a motivation for the food sharing ordinance.  Plaintiff next argues that the City could not have been considering trash and litter as a motivation for the ordinance because the ordinance exempts prepackaged foods, which "pose greater trash and litter issues" and there is no reason to suppose this exemption reduced trash any more than would a ban on non-charitable food sharing.  Plaintiff again cherry picks the record to support her own arguments.  But the record also shows that the food sharing events were advertised, drew large crowds, and frequently did result in trash being left behind.  While the Court understands that Plaintiff always cleaned up after her own food service, this does not undermine that reducing trash was one of the City's motivations for passing the ordinance.  Plaintiff next argues that although the City argues that the ordinance was intended to reduce threatening behavior, this justification makes no sense because no one is afraid of Plaintiff, and non-charitable gatherings may get out of hand and frighten people.  This again ignores the City's motivations relating to the food sharing events themselves and the feedback received from the community regarding those events.

Plaintiff asserts that the only rationale for the food sharing ordinance is "discouraging homeless people from using the parks," which is an illegitimate interest.  As discussed above, the Record does not support this assertion.  There can be no doubt that Plaintiff has the best of intentions and motivations, but Plaintiff has simply not shown that she is being denied equal protection based on the City's food sharing ordinances.  The City has shown that there is a rational basis for regulating food sharing events for charitable purposes differently than other food sharing events in the Park.

Accordingly, summary judgment will be granted in favor of Defendant as to the

1    Equal Protection claim.

2    **IT IS ORDERED:**

3           (1)      The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion

4    for Summary Judgment (Doc. 29) and Defendant's Motion for Summary Judgment (Doc.

5    34).

6           (2)      Plaintiff's Motion for Summary Judgment (Doc. 29) is **denied**.

7           (3)      Defendant's Motion for Summary Judgment (Doc. 34) is **granted**, and the

8    action is terminated with prejudice.  The Clerk of Court must enter judgment accordingly.

9           Dated this 23rd day of September, 2024.

10

11

12
                                   _____
13                                        Honorable Susan M. Brnovich
                                          United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28